UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

| | |
|---|---|
| ERIC SPOFFORD, *Plaintiff*, v. BETA LP / ALPHA TRUST, Z LUXURY MANAGEMENT LLC, CARMEN ZALDIVAR *Defendants*. | **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Eric Spofford, by and through his undersigned counsel, for his Complaint against Defendants, Beta LP / Alpha Trust, Z Luxury Management LLC, and Carmen Zaldivar (collectively, "Defendants"), states as follows:

### Preliminary Statement

1. Defendants induced Plaintiff to enter an unlawful short-term rental lease agreement for him to occupy a supposedly "luxury" property: 440 S. Hibiscus Drive in Miami Beach. Defendants pushed Plaintiff to sign the lease, knowing that a three-month lease term violated Miami Beach's prohibition on rentals that are for less than six months and one day.

2. With that knowledge, Defendants deliberately proposed that, under the lease agreement, *only Plaintiff* be required to "abide by all applicable laws, governmental rules, administrative and municipal codes and regulations." Plaintiff, however, viewed mutual compliance with all "applicable laws" as material to his entering the lease. He therefore revised it to make the obligation mutual, and Defendant Beta LP / Alpha Trust accepted the revision.

3. Under the guise of an illegal short-term rental lease agreement, Defendants insisted that Plaintiff pay an exorbitant monthly rent of $100,000.00 per month, and that Plaintiff pay two months of that rent and a $40,000.00 security deposit in advance of occupying the property. Plaintiff agreed to pay the rent and security deposit, believing both were governed by the terms and conditions of a lawful lease agreement.

4. The illegal nature of this arrangement was exacerbated by the unsuitable conditions of the property. Defendants knew that Plaintiff is a successful entrepreneur with worldwide business ventures. Defendants knew that Plaintiff intended to use the property as his temporary base of operations for his businesses. While Defendants portrayed the property as the perfect fit for Plaintiff, it was not: the house had no wireless internet connection, an inoperable stove, and spotty air conditioning, among other issues.

5. Plaintiff raised these concerns to Defendants immediately, but they were never successfully remedied. When Plaintiff discovered that Defendants had lied about the legality of the rental arrangement, that was the last straw. Plaintiff, through counsel, immediately notified the Defendants that he was terminating the lease and demanded that Defendants refund his rent and security deposit. To date, Defendants have agreed only to release the security deposit.

6. This lawsuit followed.

**PARTIES**

7. Plaintiff Eric Spofford is a Windham, New Hampshire resident, successful entrepreneur, and owner and Chief Executive Officer of numerous businesses with operations throughout the United States. His business has offices in Salem, New Hampshire, and Miami, Florida, where Mr. Spofford also owns property.

8. Defendant BETA LP / ALPHA Trust owns the property located at 440 S. Hibiscus Drive, Miami Beach, Florida (the "**Trust Defendant**"). According to Miami-Dade County property records, the Trust Defendant has a Swiss mailing address, SCHUTZENBERGSTRASSE 5B, 9053 Tuefen AR, Switzerland. The Trust Defendant has acted through and in coordination with Defendants Z Luxury Management and Carmen Zaldivar. Neither have revealed the identity of the trustee or the Trust Defendant's beneficiaries. On information and belief, however, the Trust Defendant is owned and controlled by a Switzerland-based doctor, Aldo Scarpatetti.[1]

9. Defendant Z Luxury Management is a Florida limited liability company with a principal business address of 2900 SW 28th Lane, Miami, FL 33133.

10. Defendant Carmen Zaldivar is a resident of Florida, the owner of Z Luxury Management, and serves as an authorized real estate agent for the Trust Defendant.

## JURISDICTION

11. The Court has subject matter jurisdiction in this case under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship.

12. The Court may exercise personal jurisdiction over each Defendant because the Complaint arises out of Defendants' "[o]perating, conducting, engaging in, or carrying on a business or business venture in" Florida and committing tortious acts within this State. *See* Fla. Stat. § 48.193(1)(a). The Trust Defendant is engaged in the business of residential leasing and operates that business through Ms. Zaldivar and her property management, leasing, and sales company, Z Luxury Management. The Trust Defendant, acting through and in coordination with

---

[1] *See Swiss Doctor Lists New Hibiscus Island Home for $20m*, TheRealDeal.com (last visited October 10, 2022), *available at* https://therealdeal.com/miami/2016/09/26/swiss-doctor-lists-new-hibiscus-island-home-for-20m/.

Ms. Zaldivar and Z Luxury Management, has deceptively induced Plaintiff to execute an illegal lease agreement for short-term rental of the Trust Defendant's property. The Court's exercise of personal jurisdiction therefore will comport with Florida's long-arm statute and the U.S. Constitution.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Defendants Z Luxury Management and Ms. Zaldivar reside in this judicial district, a "substantial part of the events . . . giving rise to" Mr. Spofford's claims occurred in this District, and Trust Defendant's property, which is the subject of this action, is located in this District.

## FACTUAL ALLEGATIONS

### The Illegal Short-Term Rental

14. The Miami Beach Land Development Regulations prohibit short-term rentals in Miami Beach, except in certain parts of the City, which are not applicable here. Miami Beach defines short-term rentals as rentals for periods less than six months and one day. *See* Miami Beach Code §§ 142-905, 142-1111.

15. The Trust Defendant owns property subject to Miami Beach's prohibition on short-term rentals and has not obtained zoning or other regulatory approval to rent its property for less than six months and one day.

16. On information and belief, since at least 2019, the Trust Defendant, through and in coordination with Ms. Zaldivar and her company Z Luxury Management, have rented the Trust Defendant's property for less than six months and one day on numerous occasions. Defendants, on information and belief, have done so knowing they were violating the Miami Beach Land Development Regulations.

17. In mid-June 2022, Mr. Spofford, through his representatives, identified the Trust

Defendant's property as a potential rental location.

18. Mr. Spofford's representatives informed Ms. Zaldivar that he was a successful entrepreneur and would use the rental property as his personal residence and base of business operations when he occupied it. Mr. Spofford's representatives made clear that his intended use meant that the property must have a strong and reliable wireless internet connection. Ms. Zaldivar and, on information and belief, the Trust Defendant, knew that consistent internet connectivity was material to Mr. Spofford leasing the property.

19. On June 23, 2022, Ms. Zaldivar, acting through her company Z Luxury Management and on the Trust Defendant's behalf and with the Trust Defendant's authority, provided Mr. Spofford a draft of the lease agreement that Defendants proposed would govern Mr. Spofford's occupancy of the property. That draft is attached as Exhibit A (the "**Draft Lease**").

20. That Draft Lease was titled *Residential Lease for Apartment or Unit in Multi-Family Rental Housing*, *Addendum* and included information that Ms. Zaldivar had prepopulated specific to the parties. The Draft Lease described the Lease Term as for three months, "[b]eginning on July 8th end ending on October 8th, 2022."

21. Paragraph 4 of the Draft Lease originally provided that only the tenant—*i.e.*, Mr. Spofford—must "abide by all applicable laws, governmental rules, administrative and municipal codes and regulations." *See* Ex. A ¶ 4. In hindsight, Defendants attempt to apply this provision unilaterally is additional evidence of their knowing violation of the short-term rental laws.

22. Paragraph 8 of the Draft Lease provided that rent for the three month tenancy period was $300,000.00, and that $200,000.00 was due immediately to secure the rental. Paragraph 8 of the Draft Lease also required that Mr. Spofford pay a $40,000.00 security deposit seven days before the Lease Term commenced.

23. Paragraph 8 of the Draft Lease moreover set October 8—three months from the lease start date—as when the Lease Term concluded.

24. Paragraph 9 of the Draft Lease provided that the lease could not be terminated and that rent was non-refundable.

25. After reviewing the Draft Lease, Mr. Spofford's representative asked Ms. Zaldivar if she had "anything more than this agreement that [she] provided regarding the lease" for the parties to use to govern their rental relationship.

26. In response, Ms. Zaldivar represented that Defendants have "rented this house for the *past 4 years*, [and that the Draft Lease] is an agreement [Defendants] issue for short-term." *See* Exhibit B, Email from Zaldivar, C. (June 28, 2022) (emphasis added). Ms. Zaldivar explained, alternatively, that a "longer-term 6 months, and a day or up to a year" lease would be governed under a "*normal* Rental Lease" agreement. *See id*. (emphasis added). Ms. Zaldivar's response revealed that Defendants understood the difference between a short-term rental and one for longer than six months and one day.

27. To conclude her email, Ms. Zaldivar made—what was then ambiguous, but now is telling—reference to a willingness to discuss the Draft Lease if "Mr. Spofford [did not] feel comfortable" with it. On information and belief, Ms. Zaldivar was attempting to ascertain, without revealing her effort to do so, whether Mr. Spofford or his representatives knew or harbored concerns about the illegal short-term rental arrangement. Neither Mr. Spofford nor his representatives knew that this short-term rental was illegal.

28. That is reflected by revisions Mr. Spofford made to the Draft Lease the same day he received it. Mr. Spofford's revisions were reflected in redline and sent back to Defendants for

their consideration and acceptance. The revised lease is attached as <u>Exhibit C</u> (the "**Revised Lease**").

29. Mr. Spofford made two revisions to the Draft Lease in the Revised Lease that are pertinent here. First, it was Mr. Spofford, not Defendants, who proposed the option to renew his tenancy period for an additional three months. Defendants never suggested in the lease that Mr. Spofford's occupancy would extend beyond the three-month lease term. Second, Mr. Spofford revised Paragraph 4 to require that both he *and* the Trust Defendant "abide by all applicable laws, governmental rules, administrative and municipal codes and regulations":

> 4. Landlord and Tenant shall abide by all applicable laws, governmental rules, administrative and municipal codes and regulations (the "Laws") during the Lease Term and insure that Tenant's guests and/or invitees are in compliance with the laws.

30. By requiring the Trust Defendant to also comply with applicable laws, governmental rules, administrative and municipal codes and regulations, Mr. Spofford expressed his intent that compliance was material to his entering into this lease agreement.

31. The Trust Defendant accepted all of Mr. Spofford's proposed revisions and returned, through Ms. Zaldivar, a partially executed copy of the lease for Mr. Spofford's countersignature. Mr. Spofford counter-signed it the next day. The fully executed lease agreement is attached as <u>Exhibit D</u> (the "**Executed Lease**").

32. Despite Mr. Spofford's revision to and the Trust Defendant's acceptance of the mutual obligation under Paragraph 4 of the Executed Lease, no Defendant disclosed the illegal nature of this short-term rental.

33. On information and belief, all Defendants knew that it was unlawful to rent the Trust Defendant's property for three months.

34. On information and belief, Defendants have knowingly flouted the laws restricting short-term rentals in Miami Beach and have earned handsome profits from these unlawful rental arrangements. Ms. Zaldivar has already admitted that she, through her company, and the Trust Defendant, have rented the Trust Defendant's property for less than six months and one day numerous times in the past four years.

### The Misrepresented Property Conditions

35. On July 8, 2022, Mr. Spofford moved into the Trust Defendant's property. There were problems with the property's condition almost immediately.

36. Contrary to the numerous online advertisements about the property's "extraordinary" offerings and Ms. Zaldivar's representations,[2] the property lacked the basic accommodations customary for luxury property of this kind and at this rental price point.

37. The wireless internet connection at the property did not work. The WiFi was so unreliable that Mr. Spofford was forced to leave the property to complete almost all of his business calls and video conferences.

38. Mr. Spofford's son, moreover, was unable to participate in his online education program while staying with Mr. Spofford at the property because the WiFi did not work.

39. Ms. Zaldivar, on several occasions, herself and through internet service provider technicians, attempted to rectify the problem, but could not.

40. Defendants, on information and belief, have now arranged for a complete overhaul and replacement of the wireless internet system at the property.

---

[2] *See, e.g.*, Miami Beach Waterfront Rentals, *440 S. Hibiscus Dr* (last visited Aug. 22, 2022), *available at* http://miabeachrentals.com/accommodation/2629/.

41.     The nonexistent wireless internet connection was not the only problem with the property. Despite boasting high-end kitchen appliances, the property's stove top had just *one* working burner and the dishwasher was broken when Mr. Spofford first arrived.[3] The air condition system routinely shut down, was inoperable for extended periods of time, and would take hours to actually cool the house to a comfortable temperature after restarting.

42.     While Mr. Spofford, given his background and upbringing, has experienced far worse living conditions, these problems were unacceptable in light of the rental price paid.

43.     Defendants already have admitted that there were inexcusable deficiencies with the Trust Defendant's property. Before Mr. Spofford notified Defendants of his intent to vacate the unlawful short-term rental, Defendants offered to reduce the rent for August to compensate for the property's shortcomings.

44.     Mr. Spofford tolerated the property condition issues because he had no other living space in Florida. But when he discovered that the rental arrangement was unlawful, Mr. Spofford immediately decided to find an alternative living situation and vacated the property on August 18.

45.     Mr. Spofford, through counsel, has since informed Defendants that he would not pay additional rent under the unlawful Executed Lease and that he was entitled to a refund of the rent and security Defendants took from him.

46.     Defendants have refused to refund Mr. Spofford the rent. Defendants just recently returned Mr. Spofford's security deposit.

47.     As part of their refusal and attempt to intimidate Mr. Spofford, Defendants have threatened to pursue counterclaims against Mr. Spofford if he filed a lawsuit.

---

[3]     *Cf. supra* n.2.

**Miami Beach Code Compliance Department Issued a Notice of Violation**

48. On August 30, 2022, the Miami Beach Code Compliance Department issued a Notice of Zoning Violation, number ZV2022-04355, pertaining to 440 S. Hibiscus Drive (the "**Violation**").

49. The Miami Beach Code Compliance Department identified the Trust Defendant as the "Violator" and provided the following information about the Violation:

| Code | Description | Status | Priority | Citation Issue Date | Compliance Date | Resolved Date |
|---|---|---|---|---|---|---|
| Short Term Rental - Home 006Z | Section 142-905 (b) (5): Unauthorized accessory uses in single-family districts and/or advertising the residential property for the purpose of promoting the occupancy of the single family home for less than 6 months and 1 day, which is prohibited. | Not in Compliance | High | 08/30/2022 | 08/30/2022 | |

50. Put simply, the Miami Beach Code Compliance Department has concluded that the Trust Defendant's short-term leases violate Miami Beach Land Development Regulations.

## CAUSES OF ACTION

### COUNT I
### RESCISSION
### (Against All Defendants)

51. The preceding paragraphs are incorporated and alleged herein by this reference.

52. This Count II is for Rescission of the Executed Lease.

53. Because the Executed Lease is for occupancy of an illegal short-term rental, the Executed Lease is itself illegal and unenforceable. Moreover, in order to induce Mr. Spofford to enter into the Executed Lease, Defendants made a misrepresentation of material fact on which Mr. Spofford justifiably relied.

54. Defendants knew the Executed Lease was illegal and unenforceable, yet still required that Mr. Spofford pay rent and a security deposit thereunder.

55. Because the Executed Lease is illegal, its terms are unenforceable, and Mr. Spofford is without an adequate remedy at law.

56. Mr. Spofford therefore has notified Defendants of his desire to rescind the Executed Lease, and now asks that this Court order such rescission and order that Mr. Spofford be restored to his status quo before entering the Executed Lease.

57. To that end, Mr. Spofford is entitled to a complete refund of the rent paid, $200,000.00, under the illegal Executed Lease.

## COUNT II
## CONVERSION
### (Against All Defendants)

58. The preceding paragraphs are incorporated and alleged herein by this reference.

59. This Count III is for Conversion and seeks damages for Defendants conversion of specifically identifiable funds.

60. Defendants converted to their own use, on information and belief, the $200,000.00 in rent that were then the property of Mr. Spofford.

61. Defendants wrongfully deprived Mr. Spofford of his property, the rent, because they deceived him into paying it for an unlawful short-term rental.

62. Mr. Spofford has a right of possession to the $200,000.00 in rent that Defendants have converted and has made a demand for return of both amounts.

63. Defendants have refused and intend to permanently deprived Mr. Spofford of his $200,000.00.

64. As a direct and proximate result of this conduct, Mr. Spofford is entitled to recover actual, consequential, punitive damages, pre- and post-judgment interest, disgorgement or restitution, and attorneys' fees, costs, and expenses.

## COUNT III
## UNJUST ENRICHMENT
### (Against All Defendants)

65. The preceding paragraphs are incorporated and alleged herein by this reference.

66. Plaintiff conferred a monetary benefit on Defendants by paying $240,000.00 for property that, unbeknownst to him, was rented to him illegally and in conditions materially inferior to that which he had bargained for with Defendants.

67. Defendants requested, had knowledge of, and accepted this monetary benefit.

68. Defendants have retained $200,000.00 of this benefit conferred.

69. Defendants' retention of this monetary benefit is inequitable under the circumstance, and Defendants should not be allowed to retain these benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Awarding Plaintiff judgment in the amount of $200,000.00.

2. Awarding Plaintiff his attorneys' fees and costs, and any such other and further relief as the nature of this cause requires.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: November 4, 2022        Respectfully submitted,

By */s/ Christina Olivos*
Christina Olivos, Esq.
Florida Bar No.: 119580
colivos@reedsmith.com
**REED SMITH LLP**
200 South Biscayne Blvd., Floor 26
Miami, FL  33131
Telephone No.:  (786) 747-0200

*Counsel for Plaintiff Eric Spofford*